## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| AHMED HUSSEIN, | ) |
| | ) |
| Plaintiff, | ) Case: 4:25-cv-00398 |
| | ) |
| v. | ) |
| | ) |
| SSM HEALTH CARE GROUP, | ) |
| | ) Jury Trial Demanded |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, Ahmed Hussein ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against SSM Health Care Group ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), seeking redress for Defendant's race-based discrimination, race-based harassment, religious based discrimination, religious based harassment, and retaliation under Title VII.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue of this action properly lies in the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent have been fulfilled or been complied with.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of his receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. At all times material to the allegations of this Complaint, Plaintiff, Ahmed Hussein, resides in Alachua County, Florida.

9. At all times material to the allegations in this Complaint, Defendant, SSM Health Care Group, is a corporation doing business in and for St. Louis County, Missouri, whose address is 10101 Woodfield Lane, St. Louis, Missouri 63132-2922.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12. Plaintiff worked for Defendant as an Assistant Professor from on or about July 1, 2019, until on or about June 30, 2024.

13. Since the beginning of Plaintiff's, Defendant has subjected Plaintiff to different

terms and conditions of employment than others not within Plaintiff's protected class and has been subjected to a hostile work environment on the basis of race and religion, violating Title VII and Section 1981.

14.     Plaintiff is Muslim-Arab and is a member of a protected class because of their race and religion whom Defendant subjected to different terms and conditions of employment than others not within Plaintiff's protected class.

15.     Since Plaintiff started work in or around July 2019, Plaintiff was paid way less than his colleague Dr. Philip Mar, a US citizen of Asian background, although they both started work on the same day on or around July 2019 and were allocated equal clinical work.

16.     The explanation Plaintiff was given was that Dr. Mar was doing administrative work where Plaintiff was not.

17.     In contrast, Plaintiff was denied doing administrative work despite Plaintiff's repeated requests for that as requesting to work as lab director.

18.     Therefore, Plaintiff was being treated differently than his colleague outside Plaintff's protected class.

19.     In or around August 2022, Dr. Harjai started to question Plaintiff about going to Plaintiff's Friday prayer.

20.      Although Dr. Hariai said he would allow Plaintiff to do his Friday prayer, he asked Plaintiff to keep it secret and not to tell anybody about it.

21.     Plaintiff's request to participate in Friday prayer was effectively a request for a religious accommodation.

22.     Following the discussion around Plaintiff's Friday prayer, a clear discriminatory behavior towards Plaintiff became apparent as discussed below.

23. Similarly, when Plaintiff asked the secretary to reschedule Plaintiff's on-call week so that he do not take that during the Holy month of Ramadan in or around March -April 2024, Dr. Nayak told Plaintiff that Plaintiff's request to the secretary was in an affirmative tone and therefore was inappropriate.

24. However, Plaintiff's request again constituted a request for religious accommodation.

25. A similar discriminatory attitude was directed towards Muslim – Arab colleagues; Dr. Osama Osman who faced discrimination when he requested to perform his prayers and had his contract non-renewed in or around 2024, and Dr. Elsayed Abo-Salem who was denied work privileges and had his contract non-renewed in or around 2023.

26. The repeated actions demonstrate a pattern of discriminatory behavior towards Muslim-Arab individuals.

27. In or around May and June 2023, Plaintiff discussed the discrepancy in wages issue between and Dr. Mar with the dean of medical school, Dr. Jacobs, who directed Plaintiff to call an administrator called Kevin Elledge.

28. When Plaintiff discussed with him Plaintiff's grievances, he disgracefully called Plaintiff a "liar".

29. Plaintiff complained about that to both personnel of St. Louis University and SSM Health, which acquired St. Louis University Hospital in or around 2022.

30. Neither party responded to Plaintiff's complaints.

31. Therefore, Defendant failed to investigate and/or take any remedial measures following Plaintiff's complaint.

32. Additionally, Plaintiff received a letter of contract non-renewal from St. Louis

4

University School of Medicine for the academic year 2025.

33. Therefore, Plaintiff had to resign before on or around June 30, 2024.

34. In or around February 2024, both Dr. Ravi Nayak and Dr. Harjai alleged that there were complaints regarding "issues" about Plaintiff.

35. These supposed reports about Plaintiff were never presented to Plaintiff in writing.

36. However, these complaints were used to harass and humiliate Plaintiff.

37. Defendant never investigated any of these complaints let alone told Plaintiff the results of the investigations.

38. Despite handing in Plaintiff's resignation letter on or around March 24, 2024, which was accepted as confirmed by an email by Dr. Harjai, Defendant claims that they terminated Plaintiff's employment and denied Plaintiff's privileges before on or around June 30, 2024.

39. Furthermore, Defendant badmouthed Plaintiff to future potential employers using that claim, as stated below.

40. Plaintiff usually took his vacations around the time of Islamic religious occasions such as Ramadan and Eid.

41. After Plaintiff's vacations in or around March 2024 and in or around June 2024 around the time of Ramadan and Eid, respectively, were approved, Plaintiff was requested to reschedule or cancel them by Dr. Harjai, which is a clear religious discrimination in the form of vacation time discrimination.

42. Furthermore, in or around March 2024 Plaintiff was denied going for training for a procedure, while my colleague D. Mar was allowed to go to training for the same procedure.

43. Again, Dr. Harjai mentioned Plaintiff's above-mentioned approved vacations as the cause for denying Plaintiff time off for training.

5

44. In or around April 2024, Plaintiff was not paid some of my on-call week's wages without providing any explanation.

45. The discrimination continued until the end of Plaintiff's employment and is continuing to happen in the form of defamation that led to Plaintiff's forced resignation from his current employment at the University of Florida Hospital on or around November 22, 2024, and his ongoing difficulty in securing another permanent employment.

46. Plaintiff had to file an EEOC complaint, Charge Number: 510-2025-03606, against Plaintiff's current employer, the University of Florida, as they unjustly acted on the St. Louis University Hospital defamation, which they confirmed to Plaintiff its receipt in a conversation in November 2024.

47. Plaintiff was unable to work in the week of Monday, on or around June 24, 2024, to on or around Saturday, June 30, 2024, because of difficulty walking caused by a work-related orthopedic problem in Plaintiff's right foot, and his request for sick leave was apparently accepted by the cardiology manager Susan Schuler.

48. However, Plaintiff was subsequently notified that his request was denied, and Plaintiff did not receive any payment for the period from on or around June 7, 2024 to on or around June 30, 2024.

49. On June 27, 2024, Plaintiff sent a complaint by email about the discrimination that Plaintiff had been suffering to Dr. Fred Pestello, St. Louis University President, to the head of the equality and diversity department in St. Louis University, and to SSM Health CEO Laura Kaiser.

50. However, Plaintiff did not receive any response from any of them until recently.

51. Now, Plaintiff has been hearing from future potential employers that St. Louis University Hospital and SSM Health terminated Plaintiff's job on June 7, 2024, and denied

Plaintiff medical privileges.

52. These acts of termination and denial of medical privileges, if confirmed, represent retaliation because of the complaint Plaintiff made on June 27, 2024 and intentional acts to tarnish Plaintiff's reputation and to cause him to lose out on opportunities, because many states and hospitals will not employ physicians who were terminated or who had denial of their medical privileges.

53. Of note, all Plaintiff's efforts to prevent or limit the damaging effect of that work-related injury were ignored by St. Louis University Hospital and SSM Health.

54. This discrimination not only affected Plaintiff's morale but has also created a hostile work environment that may have affected Plaintiff's ability to perform his duties effectively.

55. Plaintiff had no prior disciplinary issues or write-ups.

56. Therefore, it was clear that Plaintiff had been terminated on the basis of his race and religion, and his request for religious accommodation.

57. Plaintiff was unlawfully terminated because of Plaintiff's race and religion, (Muslim - Arab) on June 7, 2024.

58. Plaintiff was retaliated against, and Plaintiff's employment was ultimately terminated for opposing unlawful discrimination and for exercising Plaintiff's protected rights.

59. Plaintiff was targeted for termination because of their race.

60. Plaintiff suffered multiple adverse employment actions including, but not limited to being terminated.

61. There is a basis for employer liability for the race-based and religious-based harassment that Plaintiff was subjected to.

62. Plaintiff can show that they engaged in statutorily protected activity—a necessary component of Plaintiff's retaliation claim—because Plaintiff lodged complaints directly to Defendant's HR about the harassment.

## COUNT I
### Violation of 42 U.S.C. § 1981
### (Race-Based Discrimination)

63. Plaintiff repeats and re-alleges paragraphs 1-62 as if fully stated herein.

64. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

65. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

66. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

67. Defendant's unlawful conduct resulted in considerable harm and adverse employment actions to Plaintiff and is entitled to all legal and equitable remedies under Section 1981.

68. As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)

69. Plaintiff repeats and re-alleges paragraphs 1-62 as if fully stated herein.

70. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

71. Plaintiff met or exceeded performance expectations.

72. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

73. Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

74. Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's race.

75. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

76. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of The Civil Rights Act of 1964
### (Race-Based Harassment)

77. Plaintiff repeats and re-alleges paragraphs 1-62 as if fully stated herein.

78. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

79. Defendant knew or should have known of the harassment.

80. The race-based harassment was severe or pervasive.

81. The race-based harassment was offensive subjectively and objectively.

82. The race-based harassment was unwelcomed.

83. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's race, African American.

84. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

85. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violations of Title VII of the Civil Rights Act of 1964
### (Religion-based Discrimination)

86. Plaintiff repeats and re-alleges paragraphs 1-62 as if fully stated herein.

87. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's religion, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

88. Plaintiff met or exceeded performance expectations.

89. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

90. Defendant terminated Plaintiff's employment on the basis of Plaintiff's religion.

91. Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's religion.

92. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

93. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT V
### Violations of Title VII of the Civil Rights Act of 1964
### (Failure to Accommodate Religious Belief or Practice)

94. Plaintiff repeats and re-alleges paragraphs 1-62 as if fully stated herein.

95. Title VII requires an employer to reasonably accommodate an employee's religious beliefs or practices, unless doing so would cause an undue burden on the employer.

96. Plaintiff holds a sincere religious belief and requested accommodation to practice her religion.

97. Defendant was aware of the religious practice and the need for accommodations (minimal time off on Tuesdays and Saturdays).

98. Defendant failed to engage in an interactive process to determine the appropriate accommodations after Plaintiff requested a reasonable accommodation.

99. The religion-based accommodation that Plaintiff requested was objectively reasonable and did not place an undue burden on Defendant.

100. Instead of taking steps to accommodate Plaintiff's request to not work Tuesday at 7:00 PM and Saturdays at 10:30 AM to attend to her religious obligations, Defendant terminated Plaintiff on the basis of their religion and religious practices.

101. Accordingly, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's sincerely held religious beliefs or practices in violation of Title VII.

102.   As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

## COUNT VI
### Violation of Title VII of The Civil Rights Act of 1964
### (Retaliation)

103.   Plaintiff repeats and re-alleges paragraphs 1-62 as if fully stated herein.

104.   Plaintiff is a member of a protected class under 42 U.S.C. § 2000e, *et seq*.

105.   During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race discrimination or race-based harassment.

106.   As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

107.   In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of race discrimination or harassment.

108.   Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

109.   Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

110.   By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the race-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

111.   Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

112.   As a direct and proximate result of the above-alleged willful and/or reckless acts of

Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

    a. Back pay with interest;

    b. Payment of interest on all back pay recoverable;

    c. Compensatory and punitive damages;

    d. Reasonable attorneys' fees and costs;

    e. Award pre-judgment interest if applicable; and

    f. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 27th day of March 2025.

/s/ *Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
IL Bar No.: 6340657
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307 - 7632
Fax (630) 575 - 8188
ceisenback@sulaimanlaw.com
*Attorney for Plaintiff*